IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT, STATE OF FLORIDA

JOSEPH WELLS,
     Plaintiff,

                                      CASE NO: 8:05-CV-021930-T-EAJ

vs.

XPEDX, a Division of International
Paper Co. , a foreign corporation
authorized to do business in
Florida.
     Defendant.
_____/

## AMENDED MOTION TO COMPEL

COMES NOW the Plaintiff, by and through his undersigned counsel, and would file this, his Amended Motion to Compel pursuant to Fed. R. Civ. P. 37, and Motion to Extend Discovery and would show:

1.     The Plaintiff served his Amended Request for Production on Defendant on or about December 4, 2006.

2.     Defendant responded on or about January 5, 2007.

3.     On or about January 9, 2007, the Plaintiff attempted to resolve various issues with the Response relating to documents that were not provided for various reasons. Exhibit A.

4.     Specifically, the Defendant had failed to provide the documents requested in Requests 1 through 10, failed to respond to Request 11, failed to fully respond to Requests 15 and 16 and failed to respond to Request 19.

5.     In compliance with Local rule 3.04 (a) the following information is provided as to these Requests and the responses thereto:

-1-

Request 1.   All e-mails sent by Mr. Jack Luker between March 18, 2002 and March 30, 2002.

Response:   Defendant objects to Request for Production No. 1 to the extent the request seeks all e-mails without limitation as to the subject matter of the e-mails.

Without waiving the foregoing objections, Defendant maintains no such documents.

Request 2.   All e-mails sent by Mr. Dan Watkoske between March 18, 2002 and March 30, 2002.

Response:   Defendant objects to Request for Production No. 2 to the extent the request seeks all e-mails without limitation as to the subject matter of the e-mails.

Without waiving the foregoing objections, Defendant maintains no such documents.

Request 3.   All e-mails between Mr. Jack Luker and Mr. Art Douville between February 1, 2002 and March 30, 2002.

Response:   Defendant objects to Request for Production No. 3 to the extent the request seeks all e-mails without limitation as to the subject matter of the e-mails.

Without waiving the foregoing objections, Defendant maintains no such documents.

Request 4.   All e-mails between Mr. Dan Watkoske and Mr. Art Douville between February 1, 2002 and March 30, 2002.

Response:     Defendant objects to Request for Production No. 4 to the extent the request seeks all e-mails without limitation as to the subject matter of the e-mails.

Without waiving the foregoing objections, Defendant maintains no such documents.

Request 5.     All e-mails of Ricardo Moncadin between September 15, 2002 and October 15, 2002.

Response:     Defendant objects to Request for Production No. 5 to the extent the request seeks all e-mails without limitation as to the subject matter of the e-mails.

Without waiving the foregoing objections, Defendant maintains no such documents.

Request 6.     All e-mails between Mr. Dan Watkoske and Mr. Jack Luker between November 20, 2002 and December 10, 2002.

Response:     Defendant objects to Request for Production No. 6 to the extent the request seeks all e-mails without limitation as to the subject matter of the e-mails.

Without waiving the foregoing objections, Defendant maintains no such documents.

Request 7.     All e-mails between Mr. Jack Luker and Mr. Art Douville between December 1, 2002 and February 1, 2003.

Response:     Defendant objects to Request for Production No. 7 to the extent the request seeks all e-mails without limitation as to the subject matter

of the e-mails.

Without waiving the foregoing objections, Defendant maintains no such documents.

Request 8.   All e-mails between Mr. Art Douville and Mr. Bob Grillet between December 1, 2002 and February 1, 2003.

Response:   Defendant objects to Request for Production No. 8 to the extent the request seeks all e-mails without limitation as to the subject matter of the e-mails.

Without waiving the foregoing objections, Defendant maintains no such documents.

Request 9.   All e-mails sent by Mr. Morrow between November 20, 2002 and December 10, 2002.

Response:   Defendant objects to Request for Production No. 9 to the extent the request seeks all e-mails without limitation as to the subject matter of the e-mails.

Without waiving the foregoing objections, Defendant maintains no such documents.

Request 10.   All e-mails sent to and by the Plaintiff between October 1, 2001 and December 31, 2002.

Response:   Defendant objects to Request for Production No. 10 to the extent the request seeks all e-mails without limitation as to the subject matter of the e-mails.

Without waiving the foregoing objections, Defendant maintains no

such documents.

Request 11.   The report on discrimination within xpedx that was prepared by Carolyn Hamrick of Orange Beach, AL., a retired employee of International Paper.

Response:   Defendant objects to Request No. 11 on the ground that the request is unclear as to the specific report requested. Defendant further objects on the ground that it is irrelevant, immaterial and not likely to lead to the discovery of admissible information. Defendant further objects to Request for Production No. 11 as it seeks information that is protected from disclosure under the attorney-client privilege and/or the work product doctrine.

Request 15.   Any civil actions filed against xpedx between January 1, 2000 and January 1, 2004 alleging age discrimination

Response:   Defendant objects to Request for Production No. 15 on the grounds that the information sought is not relevant or material to the subject matter of this lawsuit, nor it the Request reasonably calculated to lead to discovery of admissible evidence. Defendant further objects as the time limitation is overly broad.

Without waiving the foregoing objections, there were no civil actions alleging age discrimination filed against xpedx's National Accounts division between January 1, 2000 and January 1, 2004 other than the instant action.

Request 16.   Any internal complaints filed within xpedx between January 1, 2000

and January 1, 2004 alleging age discrimination.

Response:   Defendant objects to Request for Production No.16 on the grounds that the information sought is not relevant or material to the subject matter of this lawsuit, nor is the Request reasonably calculated to lead to discovery of admissible evidence. Defendant further objects as the time limitation is overly broad.

Without waiving the foregoing objections, defendant attached responsive documents related to the xpedx National Accounts division.

Request 19.   Employee records showing the names, ages and positions of all individuals who were hired as new hires, were accepted as transfers from another segment of International Paper in the level of manager or above or were promoted to that level by xpedx between December 1, 2002 and June 1, 2003, to include the position title and the date of action.

Response:   Defendant objects to Request for Production No. 19 on the grounds that the information sought is not relevant or material to the subject matter of this lawsuit, nor it the Request reasonably calculated to lead to discovery of admissible evidence. Defendant further objects as the time limitation is overly broad.

Without waiving the foregoing objections, a listing of employees promoted to managerial positions in xpedx National Accounts between December 1, 2002 and June 1, 2003 will be produced

according to agreement between the parties.

6.      On January 9, 2007, the Plaintiff forwarded a letter to the Defendant clarifying the requests which the Defendant claimed were ambiguous and made certain concessions in an attempt to reach a resolution of this matter. (Exhibit A.)

7.      With regard to the e-mails set out in Requests #1 through 10, in its response the Defendant claimed that the requested e-mails had been deleted pursuant to a corporate policy that automatically deleted e-mails after 90 days.

8.      Defendant responded verbally that such was the policy and, on or about January 29, 2007, produced a letter in response to the Plaintiff's letter of January 9, 2007, in which the Defendant attached a "Policy Statement" concerning e-mails. (Exhibit C.)

9.      This "Policy Statement" has a copyright date of 2007, and thus was not necessarily the policy that was in existence in 2006, or in 2003, when the complaint was filed.

10.     Within the responsive letter of counsel for the Defendant (Exhibit B) the Defendant claims that all e-mails would have been automatically deleted pursuant to this 90 day policy.

11.     Prior to the depositions conducted in Loveland, Ohio, Defendant produced certain e-mails which are attached hereto. Exhibit D.

12.     If the 90 day policy had actually been in effect, these produced e-mails would have also been deleted.

13.     On or about January 10, 2007, in an effort to remove any ambiguity in the wording of the First Request for Production, the Plaintiff served his Second Request for

Production on the Defendant.

14.     On or about February 15, 2007, the undersigned received the Defendant's Response to the Plaintiff's Second Request for Production.

15.     This response provided documents setting out the establishment of the new e-mail system, to include copies of the documents that were transmitted to employees of the Defendant concerning the deletion of e-mails, and thus the Defendant has complied with that portion of the original Motion to Compel requiring the documents establishing the e-mail deletion program.

16.     The documents produced in the Second Request for Production still do not satisfy the requirements of the First Request for Production in that the documents provided in the Second Request for Production appear to show that e-mails are, in fact, kept in some storage system whereby they can be retrieved with the approval of either the legal department or the finance department of International Paper. Exhibit E and F.

14.     Although the initial documents claim that there is only a four day window for retrieving such documents (Exhibit E), the later documents contain no such limitation (Exhibit F).

15.     Thus, the Defendant's own production argues against their claim that the e-mails, once they have been automatically deleted, cannot be recovered and produced.

16.     Based on the foregoing the Defendant has failed to comply with the First Request for Production, number 1 though 10 and must be compelled to produce all e-mails, the legal section being required to give the required approval for such retrieval.

17.     Defendant also failed to produce the report(s) of Carol Hamrick, which

report was requested in Request 11, citing to privilege.

18.     Defendant's position is that this document is covered by work product privilege and/or attorney-client privilege.

19.     The Defendant is in error in claiming attorney/client privilege in that this is, at best, a report prepared by Ms. Hamrick based on her interviewing employees, and non-employees, of the Defendant.

20.     Defendant also claims that this report "was conducted following receipt of Plaintiff's charge of discrimination." Exhibit B.

21.     This claim is either in error or Carol Hamrick conducted multiple investigations for the Defendant in that Carol Hamrick contacted and interviewed the Plaintiff about discrimination within xpedx on or about February/March of 2003, which was shortly after the Plaintiff was terminated and some 9 months prior to the complaint being filed with the EEOC.

22.     The Plaintiff believes that this initial investigation by Carol Hamrick was initiated as a result of a letter from Mr. Timothy Deese to the President of xpedx, said letter being mailed prior to December 1, 2002. Exhibit F.

23.     The Plaintiff's belief is based on the following:

a.      Ms. Hamrick contacted Mr. Deese by telephone about his letter to the president of xpedx.

b.      Ms. Hamrick claimed to Mr. Deese that she was hired by Defendant to investigate a complaint that was lodged by Mr. Tim Deese with the president of xpedx.

c.      This statement seemed consistent to Mr. Deese since he had written such

a letter.

d.      Mr. Deese related to Ms. Hamrick the acts of discrimination he had observed within xpedx

e.      In response to a request from Ms. Hamrick during this interview Mr. Deese also provided multiple names to Ms Hamrick of other individuals who had suffered discriminatIon within xpedx.

f.      Ms. Hamrick's interview of Mr. Tim Deese occurred sometime during November or December of 2002, and within 60 days of the Plaintiff being terminated.

g.      These names included Plaintiff, Mr. Charlie Cruthers, "Buzz Ryland," David Heissenbuttle; and possible Mr. Jim Corbett.

h.      Ms.  Hamrick assured Mr. Deese that she would interview all witnesses whose names were given to her by Mr. Deese.

i.      At the time these names were provided to Ms. Hamrick and unknown to Mr. Deese, the Plaintiff  had either been terminated or was within days of being terminated based on age discrimination and being a whistleblower.

j.      The Plaintiff was contacted between December 9, 2002, and December 16, 2002, by Mr. Timothy Deese and told that he may be contacted by a Carolyn Hamrick regarding the claims of discrimination contained in Mr. Deese's letter to Mr. Lowe, the president of xpedx.

k.      The Plaintiff was contacted by Ms. Hamrick and returned her telephone call prior to March of 2003.

l.      During the one-hour plus interview the Plaintiff informed Ms. Hamrick of

the problems that he observed within xpedx and the acts perpetrated upon him..

m.    Ms. Hamrick's stated purpose for conducting the interview, as related by Ms. Hamrick to both Mr. Deese and to Mr. Wells, was to investigate discrimination within xpedx.

23.    Based on these events and the present claims of the Defendant as to an investigation <u>after</u> the Plaintiff filed his EEOC complaint, there appears to have been multiple investigations conducted by Ms. Hamrick regarding discrimination within xpedx.

24.    The Defendant is attempting to convert what is, at the best, work-product privilege information, and probably only a report from an "expert," into attorney-client information since the rules for disclosure are different for documents depending on how the report is classified, and should be required to produce the report.

25.    In the alternative, the Defendant should be required, at the least, to produce the notes of the interviews conducted by Ms. Hamrick, redacted of any thoughts or impressions of Ms. Hamrick, since these interview notes cannot be considered "privileged" based on the following:

a.    The parties interviewed had no "attorney-client" relationship with Ms. Hamrick and most had already been terminated by the Defendant.

b.    The parties were not informed that their interviews were to be considered "privileged."

c.    Under work-product the privilege goes solely to the thoughts and conclusions of the individual, and not to the raw interviews that produced those thoughts and conclusions

d.     The interview notes of Ms. Hamrick can be redacted, if necessary, to eliminate Ms. Hamrick's thoughts <u>during</u> the interviews themselves.

e.     If the work-product cannot be replicated or obtained by the other party, then the privilege does not attach.

26.     Under the facts in this case, there is no work-product or attorney-client privilege attached to the interviews of the individuals contacted by Ms. Hamrick and there has been no showing in the form of a contract that Ms. Hamrick was employed as an attorney or an expert by International Paper in this matter, thus making her nothing more than a private investigator, whose written reports are fully discoverable.

27.     The Plaintiff, in Requests 15 and 16, requested documents from the Defendant concerning age discrimination complaints of any type made against the Defendant during a relevant time period.

28.     The Defendant has refused to produce such documents alleging that they are not discoverable since they are not relevant and will not lead to relevant information.

29.     The Defendant is in error in that discovery of such documents is permitted under the rules and the case law since such documents could show a pattern of discrimination, and thereby show a climate of discrimination within xpedx.

30.     Additionally such reports would provide an independent basis for the Plaintiff's claims.

31.     The Plaintiff in Request 19 asked for information concerning new hires and transfers.

32.     The Defendant, in its response references an "agreement between the parties" to produce records for only "National Accounts.

33.     There has been no "agreement" limiting the discovery to just "National Accounts" and the Defendant has failed to produce any records as to xpedx.

AUTHORITY

The first issue to address is that of the e-mails that were requested. In an attempt to resolve the issue the Plaintiff contacted the Defendant after being verbally informed of a "procedure" for automatically deleting the e-mails and asked for a copy of this policy. The Defendant initially responded by providing a policy statement that was, evidently, written some three to four years after the events (based on the copyright date) and thus is not responsive. The Defendant then provided additional documentation concerning the establishment of the e-mail system; however, this documentation is ambiguous and self contradictory.

The Plaintiff has properly limited the e-mails sought as to the time frame involved and the individuals involved. The time frames and individuals correspond to the specific events set out in the Plaintiff's complaint and are not overly burdensome on the Defendant. Since the e-mails are limited in nature as to time and scope, the Defendant must produce them.

The second issue is compelling the disclosure of the report(s) by Ms. Hamrick. There appears to be more than one report involving investigations of discrimination within xpedx by Ms. Hamrick based on: (a) the fact that the Defendant has questioned which report is sought, (b) the Defendant has claimed that Ms. Hamrick prepared a report _after_ Mr. Wells filed his EEOC complaint, and (c) the Plaintiff knows that he was interviewed by Ms. Hamrick some 9 months prior to the filing of his EEOC complaint.

The Defendant has claimed protection of the report(s) under both attorney-client

privilege and under work product privilege. The Plaintiff will deal with each of these privileges in turn.

Attorney-client privilege is available where the parties are in an attorney-client relationship and where the information for which the privilege is claimed relates to discussions involving legal advice. In this matter the Defendant has not established the relationship between Defendant xpedx and Ms. Hamrick beyond saying that there is an attorney-client privilege. What the Plaintiff does know is that Ms. Hamrick is a retired former employee of either International Paper or one of its subsidiaries and that she was hired by either xpedx or International Paper (the Plaintiff does not know which) to conduct either one, or multiple, investigations of discrimination within xpedx. There is no claim that Ms. Hamrick is an attorney; the Plaintiff has not been able to locate a state where Ms. Hamrick is a member of the bar; and Ms. Hamrick is not listed as a member of the bar by Martindale-Hubbell. These facts would defeat a claim of attorney-client privilege in her reports.

Even if Ms. Hamrick were an attorney, the Plaintiff also knows that Ms. Hamrick interviewed multiple individuals not employed by either xpedx or International Paper, and thus there would be no attorney-client privilege as to those interviews unless the interviewee had retained Ms. Hamrick to represent them. As the Court said in *TVT Records and TVT Music v. Island Def Jam Music Group*, 02 Civ. 6644 (VM) (S.D.N.Y. March 4, 2003), citing to *ECDC Environmental, L.C. v. New York Marine and Gen's Ins. Co.*, No. 96 Civ. 6033 (BSJ) (HBP), 1998 WL 614478 (S.D.N.Y. June 4, 1998)

> "An attorney's communication to a client reporting facts learned by the attorney from a third party is not within the attorney-client privilege unless the information is included in legal analysis or advice communicated to the

client."

In this matter the Defendant has failed to establish the basis for a claim of attorney-client privilege. Assuming that there was an attorney-client relationship between Ms. Hamrick and xpedx, there still has been no showing that the information provided to xpedx was any more than "facts learned . . . from a third party." and thus the attorney-client relationship does not arise. If the Defendant provides documentary evidence of some type of an attorney-client relationship between Ms. Hamrick and the Defendant, then the Court should examine the report(s), determine what portions are privileged, and order both the production of the non-privileged portions as well as the redacted interview notes.

The Defendant has also claimed work product privilege with regard to these reports. In evaluating a claim of work product privilege the court should be guided by *Tri-State Hospital Supply Corporation v. U.S.,* Memorandum Opinion, December 16, 2005, (D.C. 2005) which held:

> The work product doctrine is designed to balance the need of the adversary system to promote an attorney's preparation against society's general interest in revealing all facts relevant to the resolution of a dispute. In re Sealed Case, 856 F.2d 268, 273 (D.C. Cir. 1988) (citing In re Subpoenas Duces Tecubv, 738 F.2d 1367, 1371 (D.C. Cir. 1984)). In furtherance of this principle, Rule 26 of the Federal Rules of Civil Procedure protects from disclosure materials prepared by or for a party, its attorney, or its representative **in anticipation of litigation** and allows for discovery only upon a showing of substantial need and an inability to obtain the substantial equivalent without undue hardship. Fed.R.Civ.P. 26(b)(3). In ordering the disclosure of work product, the court must protect against the disclosure of an attorney's mental impressions, conclusions, opinions, or legal theories. Id. Such material, known as opinion work product, is "entitled to special protection and require[s] a stronger showing of necessity to justify release . . . although the precise contours of this showing have not been resolved." Byers v. Burleson, 100 F.R.D. 436, 439 (D.D.C. 1983) (citing Upjohn, 449 U.S. at 400-01). See also In re Sealed

Case, 856 F.2d at 273; Page 12 Willingham v. Ashcroft, 228 F.R.D. 1, 5 (D.D.C. 2005). (Emphasis added.)

In this matter, based on the timing of the telephone call to the Plaintiff, which was some 7 months prior to any filing of his EEOC discrimination complaint, the Plaintiff does not believe that the first test for a claim of work product, that of "anticipated litigation," is met. Unless the Defendant can articulate what litigation was anticipated when Ms. Hamrick was hired, which is believed to have been in November of 2002, and even before the termination of the Plaintiff, then the work product privilege does not attach.

Assuming, arguendo, that there was a valid reason for claiming work product, then the Defendant still has another hurdle to cross, that of showing that the Plaintiff can "obtain the substantial equivalent without undue hardship." In this case, the Defendant cannot make this showing. The information conveyed to the Plaintiff by Ms. Hamrick at the time of his interview was that she was contacting employees and former employees of xpedx about discrimination within the company. Obviously there was some method utilized by Ms. Hamrick to obtain the contact numbers of the individuals to be interviewed.

Based on the limited discovery time period established by the Court in this matter, and based on the difficulty for Plaintiff in attempting to obtain the names of the individuals interviewed by Ms. Hamrick within the allowed discovery time, coupled with the fact that the Plaintiff cannot duplicate the interview results of present employees with that provided to Ms. Hamrick, the report should not be granted work-product privilege.

Even under work product privilege or the attorney-client privilege, any notes of interviews conducted by Ms. Hamrick with individuals not then employed by xpedx, once redacted of her thoughts and impressions, would not be covered by any privilege. The Plaintiff knows that Ms. Hamrick agreed to interview the following non-employees: Joseph Wells, Charley Cruthers, "Buzz" Ryland and David Heissenbuttle. The Plaintiff also believes that other individuals, both employees and non-employees, were interviewed. The Defendant must produce the report, redacted of "mental impressions, conclusions, opinions, or legal theories," as well as the raw notes of the interviews of all individuals, also redacted of "mental impressions, conclusions, opinions, or legal theories."

Finally, it would appear that Ms. Hamrick was actually hired by Defendant to utilize her "expertise" in human relations matters to conduct an investigation into discrimination problems within Defendant. If that is true, and if Ms. Hamrick prepared a written report, than this report should be discoverable as an expert report prepared in anticipation of litigation.

Based on the foregoing, the Court should compel the production of the reports penned by Ms. Hamrick, and compel the interview notes of Ms. Hamrick.

The Plaintiff has also requested in #15. #16 and #19 various documents concerning discrimination complaints and promotion results within the Defendant. The Defendant has refused to provide said documents to the Plaintiff, claiming that they are not relevant. Under the very case previously cited by the Defendant, *Nevin v. CSX Transportation, February 12, 2003* (M.D. Fla. 2003), the principle of "more liberal discovery rules in cases involving allegations of employment discrimination" would apply

to this case, and since the issue is a pattern of discrimination at the headquarters level of the Defendant, the records requested are entirely proper.

WHEREFORE, based on the foregoing facts and law the Plaintiff would move this Court to:

A.   Compel the Defendant to provide all e-mails as requested by the Plaintiff or provide documentation showing that such e-mails are not available and when they were deleted from the records of the Defendant.

B.   Compel the Defendant to produce the report of Carolyn Hamrick along with the notes of her interviews with both employees of xpedx and non-employees of xpedx. If the Court determines that either attorney-client or work-product privilege applies to portions of the report(s), then have the privileged portions redacted and provide the remaining` information to the Plaintiff.

C.   Compel the Defendant to produce the documents requested in Request 15 and 16 for all of xpedx and not just National Accounts.

D.   Compel the Defendant to produce the documents requested in Request 19 for International Paper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was electronically transmitted to Karen Meyer Buesing, Zinober and McCrea, 201 E. Kennedy Blvd., Suite 800,Tampa, FL. 33602 and to Vincent Miraglia, Esq., International Paper, 6400 Poplar Ave., Memphis, TN 38917 on this, the 21st day of February, 2007.

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01 (g)**

I HEREBY CERTIFY that I have contacted counsel for the Defendant in an attempt to resolve these issues and have been unable to resolve them despite a good faith attempt to do so.

S/ Jeffrey A. Blau, Esq.
JEFFREY A. BLAU, Esq.
Fla Bar NO; 256897
ROGER BREIT, Esq.
Fla. Bar NO: 103550
213 E. Davis Blvd.
Tampa, FL. 33606
(813) 254-6906
(813) 254-6891 Facsimile
jeffreyablauesq@msn.com
