# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**JOSEPH WELLS,**

    Plaintiff,

v.                                                                      Case No.: 8:05-CV-2193-T-EAJ

**XPEDX,** a Division of
International Paper Co., a
foreign corporation authorized
to do business in Florida

    Defendant.
_____/

## ORDER

This cause comes before the court on **Plaintiff's Amended Motion to Compel** (Dkt. 82), **Plaintiff's Amended Motion to Allow Additional Depositions** (Dkt. 83), **Defendant's Response to Plaintiff's Amended Motion to Compel and to Allow Additional Depositions** (Dkt. 85); and **Plaintiff's Reply Brief** (Dkt. 86).

Oral argument has been held. After the hearing, Defendant filed **Defendant's Notice of Supplemental Authority** (Dkt. 95) and **Defendant's Affidavit in Response to Plaintiff's Supplemental Authority** (Dkt. 96).

    A.    <u>Plaintiff's Request for Discovery of Electronic Data</u>

Plaintiff's Amended Motion to Compel seeks an order requiring Defendant to produce emails of seven Xpedx employees during various time periods in 2002 and 2003. Plaintiff alleges Requests

Nos. 1-10 seek emails that are relevant to the allegations set forth in Plaintiff's complaint.[1] Plaintiff contends that Defendant implemented a new e-mail deletion policy in 2003. Under the new policy, emails are deleted within 90 days of creation, unless designated for retention. However, Plaintiff also asserts that under Defendant's policy, an email "that is automatically deleted by the system can not be restored except with the expressed consent of a member of the company's legal or tax departments." (Dkt. 88 at 18) Moreover, Plaintiff maintains that Defendant's archive system, "legal hold" folders as well as Defendant's permanent back-up computer system may contain copies of the requested emails. (Dkt. 86 at 9-12) Plaintiff seeks permission to take the deposition of Defendant's corporate representative for information technology regarding Defendant's email deletion policy and procedures for retrieving deleted emails. Plaintiff argues that, by taking the deposition of Defendant's corporate representative, he may be able to determine the existence of deleted emails and if Defendant destroyed any evidence relating to Plaintiff's claims.

In response, Defendant argues that Defendant has produced all relevant emails. Additionally, Defendant states that as a result of Defendant's e-mail policy, any emails that were not specifically preserved within 90 days of their creation were deleted. (Dkt. 85 at 7-8) Defendant argues that a deposition to inquire about Defendant's email deletion policy would be redundant and unnecessary because Defendant provided Plaintiff with a copy of Defendant's policy on email deletions.

Electronic data, such as e-mails, are discoverable. See Advisory Committee Notes, Fed. R. Civ. P. 34. Deleted emails are, in most cases, not irretrievably lost. Discoverability of Electronic Data Under the Proposed Amendments to the Federal Rules of Civil Procedure: How Effective Are

---

[1] During the hearing, Plaintiff narrowed the scope of his request to e-mails which contained Plaintiff's name.

Proposed Protections for "Not Reasonably Accessible" Data?, 83 N.C.L. Rev. 984, 988 (2005). Deleted emails may remain on a computer hard drive, servers or retained on back-up tapes. Id. at 988-90.  The producing party has the obligation to search available electronic systems for deleted emails and files.  Peskoff v. Faber, No. 04-526(HHK/JMF), 2007 U.S. Dist. LEXIS 11623, at *13 (D.D.C. Feb. 21, 2007).

      The current record is insufficient to determine whether Defendant has produced all responsive documents to Plaintiff's requests and whether responsive documents exist elsewhere in Defendant's records which may be accessed electronically.  Although Defendant alleges that all responsive emails have been produced to Plaintiff, Defendant has not provided an affidavit or other specific evidence regarding the scope of Defendant's search of its electronic depositories for responsive documents, including information concerning the source of the electronically stored information by category and type.  Nor has Defendant provided adequate information regarding Defendant's e-mail deletion policy, or the procedures for storage and retrieval of deleted emails, files, hard drives, archives and backup tape systems to allow Plaintiff to evaluate the likelihood of finding responsive information.  Thus, the court will grant Plaintiff's request to take the deposition of Defendant's corporate representative for information technology, not to exceed four hours.  To minimize costs, Plaintiff shall conduct this deposition telephonically and within the next 30 days.

      After this deposition, the parties are directed to confer in good faith in an effort to resolve the disputes relating to Plaintiff's request.  If, after conferring, the parties have not resolved the issues raised in Plaintiff's motion to compel concerning the e-mail discovery requests, Plaintiff shall file a notice with the court.  Accordingly, the court defers ruling on Plaintiff's motion to compel the production of Requests Nos. 1-10.

B.      Plaintiff's Request for Investigator's Report

Pursuant to Request No. 11, Plaintiff seeks "[t]he report on discrimination within xpedx that was prepared by Carolyn Hamrick of Orange Beach, AL., a retired employee of International Paper." (Dkt. 82 at 5)   Defendant objected to this request on the grounds that the request is unclear, the information sought is irrelevant and immaterial as well as protected by attorney-client and work product privilege.  (Dkt. 85 at 3-6)

As set forth in Plaintiff's reply brief, Plaintiff clarifies that he is seeking the production of a 2002 or 2003 report prepared by Carolyn Hamrick ("Hamrick") concerning a complaint of age discrimination filed by Plaintiff's co-worker Tim Deese ("Deese").  (Dkt. 86 at 9)

During the hearing, Defendant explained that Hamrick conducted an investigation in 2002 and 2003 ("Deese investigation") relating to a complaint of age discrimination by Deese.[2] Defendant asserts that Hamrick conducted another investigation in 2003 and 2004 ("Wells investigation") as a result of Plaintiff's age discrimination complaint to the EEOC.  In responding to Plaintiff's discovery request, Defendant assumed that Plaintiff's Request No. 11 was seeking a copy of the Wells investigation.  In light of Plaintiff's vague request for a report on discrimination prepared by Hamrick, the court finds that Plaintiff's discovery request is unclear and ambiguous and Defendant's assumption that Plaintiff sought only the Wells investigation was a reasonable assumption.

As to the Deese investigation, Plaintiff disputes that Hamrick's report on the Deese investigation is covered by attorney-client privilege or work product privilege.  First, Plaintiff notes

---

[2]   By letter of December 6, 2002, Deese wrote to the president of Xpedx that the management practices of his supervisors, Watkoske and Luker, showed a pattern of age discrimination. (Dkt. 86, Ex.B)

4

that Defendant has failed to produce any documentation that the investigation was conducted at the request of the legal department.  Second, Plaintiff asserts that Hamrick's investigation was conducted in the ordinary course of business.  Specifically, Plaintiff alleges that Hamrick, who is not an attorney, was directed by Rich Lowe ("Lowe"), the President of Xpedx, to conduct an investigation after receiving Deese's complaint of age discrimination.  (Dkt. 86 at 6)   Third, Plaintiff alleges that the report was not prepared in anticipation of litigation because, before Hamrick completed her investigation and report, Deese resigned and signed a severance agreement releasing all his claims against Defendant. (Dkt. 86, Ex. B)  Finally, Plaintiff argues that, even assuming Defendant prepared Hamrick's report in anticipation of litigation, then Defendant was required to retain all relevant documents, including emails and files, related to Deese's complaint.   Plaintiff notes that Defendant has not produced a privilege log listing the legal folders related the Wells or Deese investigations.

In contrast, Defendant maintains that Hamrick's report on the Deese investigation is covered by the attorney-client privilege and work product privilege because Hamrick was hired by Defendant's legal department to conduct an investigation.  At the hearing, Defendant submitted a December 3, 2002 letter from Richard S. Barnett ("Barnett"), counsel for Xpedx, to Hamrick, which provides in pertinent part: "We would like to engage your services to conduct an investigation of age discrimination concerns raised by Tim Deese. . . . We are engaging your services for the purpose of assisting us in the formulation of a legal strategy regarding this matter." (Hearing Ex. 1)   In addition, Defendant submitted an affidavit from Barnett stating that Hamrick's report was prepared in anticipation of litigation by Deese.   (Dkt. 96 at 3-4)    Furthermore, at the hearing, Defendant argued that Defendant's anticipation of litigation ended when Deese resigned and released any

5

claims against Defendant. (Dkt. 92) As a consequence of Deese's resignation, Defendant alleges that it did not retain legal folders relating to Deese's complaint. (Id.)

Parties may discover any relevant, unprivileged information that is admissible at trial or is reasonably calculated to lead to admissible evidence. Fed. R. Civ. P. 26(b)(1). Whether documents were prepared in anticipation of litigation should be examined on a case by case basis. Ternary v. Busch Entm't Corp., No. 05cv-1630-T-30EAJ, 2006 U.S. Dist. LEXIS 70584, * 3-4 (Sept. 28, 2006).

Where counsel seeks and obtains outside consulting services, such as investigators or accountants, the attorney-client privilege has been extended to such third parties employed to assist a lawyer in the rendition of legal services. FTC v. TRW, Inc., 628 F.2d 207, 212 (D.C. Cir. 1980). Courts have cautioned, however, that the privilege should only be extended where the consultative services are closely tied to the giving of legal, rather than business, advice. United States v. Davis, 636 F.2d 1028, 1041,1044 (5th Cir. 1981); FTC v. TRW, Inc, 628 F.2d at 212.

In this case, Defendant has established that Hamrick initiated the Deese investigation at the request of legal counsel and in anticipation of litigation. Nevertheless, whether the report was prepared in anticipation of litigation or prepared in the ordinary course of business is uncertain from the present record. In the course of the Deese investigation, Plaintiff alleges that Hamrick met with Deese in Greensboro, North Carolina to discuss his complaint. (Dkt. 86, Ex. B at 80) Deese testified that Hamrick advised him that the investigation report would be submitted to "upper management." (Dkt. 86, Ex. B at 83) At the end of the interview, Deese provided Hamrick with the names of other employees who had allegedly suffered age discrimination at Xpedx. (Dkt. 82 at 10; Dkt. 86, Ex. B at 82)

Citing to Deese's testimony, Plaintiff alleges that, before Hamrick concluded her investigation and report, Deese was given a severance package and signed a release of claims. (Dkt. 86, Ex. B at 83)  At the hearing, Defendant argued that, with Deese's resignation, Xpedx no longer anticipated litigation by Deese.  Significantly, the record does not provide any information on the date of Deese's resignation, the dates of the start and completion of the investigation, the dates Hamrick completed and submitted the report, and which departments or individuals Hamrick submitted the report.   Likewise, although the parties agree that Plaintiff was interviewed by Hamrick during the investigation, the record does not indicate the dates of Hamrick's interview with Plaintiff or other employees.[3]  (Dkt. 82 at 10-11)

A second recently filed affidavit of Barnett reiterates that the investigation was prepared in response to a formal internal complaint filed by Deese. (Dkt. 104) Barnett states again that the investigation was conducted. in anticipation of litigation.

Blanket assertions of privilege as usually insufficient.   Based on the information presented thus far, however, the court concludes that Plaintiff should be permitted to depose Hamrick for limited purposes.  See e.g . Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995)(party allowed to question witness about factual inquiries of investigation and scope of investigation).

---

[3] Defendant does not dispute that Hamrick interviewed Plaintiff as part of the Deese investigation.  Under Federal Rule of Civil Procedure 26(b), "a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that party." Fed. R. Civ.P. 26(b)(3).  This rule is mandatory and a party's statement is "discoverable as of right."  Miles v. M/V Mississippi Queen, 753 F.2d 1349, 1351 (5th Cir. 1985); see also Hughes v. Groves, 47 F.R.D. 52, 55 (W. D. Mo. 1969)(a party's own statement in the hands of the opposing party can be discovered and is not privileged).   Therefore, Plaintiff is entitled to a copy of his statement made to Hamrick during the Deese investigation.

Accordingly, Plaintiff's motion to take Hamrick's deposition is granted to the extent that Plaintiff may depose Hamrick within the next 30 days concerning factual matters in the report, including the dates of the Deese investigation, the dates Hamrick completed and submitted her written investigative report, and the individual(s) or department(s) to which she submitted her report. During Hamrick's deposition, Defendant may assert attorney-client privilege and work product privilege, if appropriate, as to any questions or requests for documents. However, even assuming Hamrick's report is covered by the work product privilege, Defendant may not assert attorney client privilege work product privilege concerning underlying facts reflected in Hamrick's report. United States v. Pepper's Steel & Alloy, Inc., 132 F.R.D. 695, 698 (S.D. Fla. 1990).

After this deposition, the parties are directed to confer in good faith in an effort to resolve the disputes relating to Plaintiff's request. If, after conferring, the parties have not resolved the issues raised in Plaintiff's motion to compel concerning Hamrick's report, Plaintiff shall file a notice with the court. Accordingly, the court defers ruling on Plaintiff's motion to compel the production of Requests No. 11, but grants the motion to the extent that Defendant shall produce a copy of Plaintiff's statement made to Hamrick during the Deese investigation.

    C.    <u>Plaintiff's Request for Company-wide Discovery</u>

As set forth in Plaintiff's Request Nos. 15 and 16, Plaintiff seeks company-wide discovery of any internal complaints or civil actions filed against Xpedx between January 1, 2000 and January 1, 2004 alleging age discrimination. (Dkt. 82 at 5-6) Pursuant to Request No. 19, Plaintiff seeks employee records showing "the names, ages and positions of all individuals who were hired as new hires, were accepted as transfers from another segment of International Paper in the level of manager or above or were promoted to that level by xpedx between December 1, 2002 and June 1, 2003, to

8

include the position title and the date of action." (Dkt. 82 at 6)

Defendant objected to these requests as seeking irrelevant information and overly broad. (Dkt. 85)  Without waiving any objections to these requests, Defendant provided responsive information related to Xpedx's National Account division.  (Id.)

Plaintiff argues that company-wide discovery is warranted in this case because the decision to terminate Plaintiff was not a local decision.  According to Plaintiff, Plaintiff's supervisors, Dan Watksoke ("Watkoske") and Jack Luker ("Luker"), both Vice-Presidents at Xpedx, reported to the President of Xpedx.  Plaintiff alleges that before making the decision to terminate Plaintiff, Watkoske and Luker discussed the action with the president of Xpedx and obtained the president's permission to terminate Plaintiff. (Dkt. 86 at 14)   Because these high level officials, with responsibilities beyond the National Accounts division, were involved in Plaintiff's termination, Plaintiff contends that company-wide discovery is relevant.

Additionally, Plaintiff asserts that Plaintiff's termination allegedly due to a reduction-in-force ("RIF") was in fact a pretext and that Defendant discriminated against Plaintiff based upon his age.  If Plaintiff was terminated at the same time other individuals were hired or promoted to similar positions of manager or above, Plaintiff contends that this statistical evidence would help establish his claims of discrimination by showing a pattern or practice of discrimination within Xpedx.

In reference to Plaintiff's request for company-wide discovery of prior internal complaints and civil actions filed against Xpedx, Plaintiff argues that evidence of similar complaints of age discrimination in another division of Xpedx involving the same decision makers is relevant to Plaintiff's complaint. In particular, Plaintiff allege at the hearing that Deese, who worked in another division of Xpedx in another state, complained about age discrimination.  (Dkt. 86 at 15; Dkt. 92)

9

Further, Plaintiff alleges that Deese was supervised by Plaintiff's same supervisors: Watkosky and Luker.  (Id.)

In response, Defendant argues that the decision to terminate Plaintiff was a local decision made within National Accounts, and not part of a larger RIF.  Citing to Nevin v. CSX Transp., No. 3:01CV1361J25TEM, 2003 Westlaw 220005030 (M.D. Fla. Feb. 13, 2003) , Defendant asserts that information beyond the National Accounts division is irrelevant and discovery should be confined to the local level.  Defendant argues that company-wide statistical evidence is irrelevant because all employment decisions regarding Plaintiff were made at the local level.   Defendant also contends that evidence of other employees who were allegedly discriminated against by the same supervisor is inadmissible because it would result in a series of mini-trials relating to other employees' grievances.  See McWhorter v. City of Birmingham, 906 F.2d 674 (11thCir. 1990).

In cases involving allegations of employment discrimination, court have applied more liberal discovery rules.  Sweat v. Miller Brewing Co., 708 F.2d 655, 658 (11th Cir. 1983).  Where employment decisions were made locally, discovery on intent should be limited to the local employing unit.   Earley v. Champion Internat'l Corp., 907 F.2d 1077, 1085 (11th Cir. 1990).  In order to expand discovery beyond the local unit, the plaintiff must make some showing of particularized  need and likely relevancy. Id.; see also Brown v. American Honda Motor Co., Inc., 939 F.2d 946, 954 (11th Cir. 1991), cert. denied, 502 U.S. 1058 (1992).  Factors that play a role in the decision whether or not to allow company wide discovery would include the number and geographical dispersion of the employer's facilities, similarities or differences in the work performed at different facilities, and whether or not a common decision maker is involved in employment decisions.  Johnson v. Metromedia Comm., No. 92-C-4073, 1992 U.S. Dist. Lexis

10

17641 at *5 (N.D. Ill. Nov. 18, 1992).  Statistical evidence may be relevant to show a pretext even if a case alleges an individual instance of discrimination rather than a pattern and practice of discrimination.  Sweat, 708 F.2d at 658.

Here, Plaintiff alleges that the decision to terminate Plaintiff involved not only Luker and Watkosky, two vice-presidents in Xpedx, but also the president of the company.  Plaintiff contends that "Defendant has presented evidence to suggest that the Plaintiff was considered for termination in March of 2002, and at that time both Mr. Luker and Mr. Watkosky informed the President of xpedx of their planned actions and obtained his permission."  (Dkt. 86 at 14)  Plaintiff also alleges that Luker and Watkosky had responsibilities beyond the National Accounts division. Yet, Plaintiff fails to cite to any documents or citation to support of these statements

In reference to Deese's complaint of age discrimination, evidence of prior discrimination charges against the same managers involved in Plaintiff's termination may be relevant to show discriminatory intent. See Miller v. Federal Express Corp., 186 F.R.D. 376, 385 (W.D. Tenn. 1999); Cook v. Yellow Freight System, Inc., 132 F.R.D. 548, 551-552 (E.D. Cal. 1990).   However, contrary to Plaintiff's assertions, Deese did not work in a different division than Plaintiff.  As noted in Deese's letter to the president of Xpedx, Deese also worked in the National Accounts division.  (Dkt. 86, Ex. A)  Thus, although Plaintiff and Deese shared the same decision makers, they worked in the same division.  Based upon the present record, Plaintiff has failed to demonstrate the need for company-wide discovery.

While concluding that Plaintiff has failed to establish that Plaintiff's termination involved more than local managers, as stated in a prior order,  there is a genuine factual dispute whether Plaintiff was terminated on an individual basis or part of a larger RIF.  (Dkt. 66)  For the reasons

previously stated, however, Plaintiff's motion to compel company-wide discovery in response to Requests Nos. 15, 16 and 19 is denied.

Accordingly, and upon consideration, it is **ORDERED** that:

(1) The court **DEFERS** ruling on Plaintiff's Motion to Compel the production of Requests Nos. 1-10 relating to the request for discovery of electronic data (Dkt. 82);

(2) The court **GRANTS** Plaintiff's motion to take the deposition of Defendant's corporate representative for information technology. (Dkt. 83)  To minimize costs, Plaintiff shall conduct this deposition telephonically and the deposition shall not exceed four hours.  After this deposition, the parties are directed to confer in good faith in an effort to resolve the disputes relating to Plaintiff's request.  If, after conferring, the parties have not resolved the issues raised in Plaintiff's motion to compel concerning the e-mail discovery requests, Plaintiff shall file a notice with the court advising the court of the remaining disputes.

(3) The court **GRANTS in PART** Plaintiff's Motion to Compel the production of Request No. 11 relating to the request of Hamrick's investigation report (Dkt. 82). Within 10 days of this order, Defendant shall produce a copy of Plaintiff's statement made to Hamrick during the Deese investigation.  The court **DEFERS** ruling on the remainder of Plaintiff's Motion to compel production of Request No. 11 pending the deposition of Hamrick;

(4) The court **GRANTS** Plaintiff's motion to take Hamrick's deposition.  (Dkt. 83) Plaintiff's deposition of Hamrick is limited to questioning Hamrick about the facts of the investigation, including the dates of the Deese investigation, the dates Hamrick

completed and submitted her written investigative report, and the individual(s) or department(s) to which she submitted her report.  During Hamrick's deposition, Defendant may assert attorney-client privilege and work product privilege, if appropriate. After Hamrick's deposition, the parties are directed to confer in good faith in an effort to resolve the disputes relating to Plaintiff's request.  If, after conferring, the parties have not resolved the issues raised in Plaintiff's motion to compel concerning Hamrick's report, Plaintiff shall file a notice advising the court of the remaining disputes.

(5) The court **DENIES** Plaintiff's motion to compel company-wide discovery in response to Requests Nos. 15, 16 and 19 (Dkt. 82).

**DONE AND ORDERED** in Tampa, Florida on this 23rd  day of April, 2007.

ELIZABETH A JENKINS
United States Magistrate Judge

13