# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**JOSEPH WELLS,**

      **Plaintiff,**

**v.**                                                **Case No.: 8:05-CV-2193-T-EAJ**

**XPEDX, a Division of International Paper
Co., a foreign corporation authorized
to do business in Florida,**

      **Defendant.**
_____/

## ORDER

Before the court are Defendant's **Motion for Summary Judgment** (Dkt. 123), Plaintiff's **Response to Motion for Summary Judgment** (Dkt. 149), and Defendant's **Reply to Plaintiff's Response** (Dkt. 162). Also before the court are Plaintiff's **Motion to Strike Portion of Defendant's Motion for Summary Judgment** (Dkt. 131), Defendant's **Response** (Dkt. 134), **Defendant's Motion to Strike Plaintiff's Exhibits A Through M and Rule 26 Expert Disclosures** (Dkt. 160), Plaintiff's **Response** (Dkt. 161), and Plaintiff's **Motion to Amend Response to Summary Judgment** (Dkt. 177).

Plaintiff Joseph Wells sues his former employer Xpedx, a division of International Paper Corporation, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et. seq., the Florida Civil Rights Act, Fla. Stat. § 760.01, et. seq., the Federal Whistle Blower Act, 42 U.S.C. § 2000e-3, and the Florida Whistle Blower Act, Fla. Stat. § 448.102(3). Plaintiff alleges damages resulting from his wrongful termination from employment on the basis of age and unlawful retaliation for complaining to supervisors about Xpedx's allegedly discriminatory practices. Plaintiff

also asserts a claim for "emotional distress."

In response, Defendant contends that Plaintiff executed a valid agreement to release all claims against Defendant (Dkt.123 at 10). Plaintiff concedes that he signed a release but challenges the validity of the release (Dkt. 149 at 8; Dkt. 2, ¶¶ 116-117, 126, 137).

Finding the validity of Plaintiff's release a potentially dispositive, threshold issue, this court bifurcated discovery, limiting initial discovery to the release of claims issue (Dkt. 23). Defendant moved for summary judgment on the grounds that the release bars Plaintiff's entire action. Denying summary judgment, this court found that a genuine issue of material fact remained as to whether Defendant terminated Plaintiff as part of a group or class incentive program (Dkt. 66). In the instant motion, Defendant moves for summary judgment on the basis that the release is valid and argues alternatively that Plaintiff's age discrimination claim fails notwithstanding the release. Plaintiff responds that the release is ineffective as a matter of law and that the record supports an inference of discriminatory intent on behalf of Defendant.  For the reasons set forth below, this court grants Defendant's motion for summary judgment.

## I.      Motions to Strike

The parties cross-move to strike portions of Defendant's summary judgment motion and Plaintiff's response. To properly challenge the admissibility of evidence submitted in support of a summary judgment motion, a party should object rather than move to strike. See Sklar v. Clough, No. 1:06-CV-0627-JOF, 2007 WL 2049698 at *1 (N.D. Ga. July 6, 2007) (citations omitted). Accordingly, the court construes the instant motions as objections to the materials supporting the parties' respective submissions.

### A.      Plaintiff's Motion to Strike (Dkt. 131)

Plaintiff objects to two portions of Defendant's motion for summary judgment: footnote three and a sentence on page eight. Defendant concedes Plaintiff's argument on footnote three (Dkt. 134 at 2) but opposes Plaintiff's objection to Defendant's statement about a charge notice from the Florida Commission on Human Relations ("FCHR"), which statement Defendant insists is fully supported by the record. The court finds that Defendant's statement on page eight of the summary judgment motion, "[t]he charge of discrimination with the Florida Commission on Human Relations, that was attached to Plaintiff's Complaint, is dated November 24, 2003," is supported by the record and is not objectionable "evidence" in support of summary judgment (Dkt. 134, Attach. 1 at 2). See Duke v. Atria, Inc., No. 2:03-CV-0934-DRB, 2005 WL 1514149 at *2 (M.D. Ala. June 27, 2005) (noting that the moving party to a motion to strike failed to particularize any objectionable evidence). Accordingly, Plaintiff's objections are sustained as to footnote three and overruled as to Defendant's mention of the FCHR charge notice.

## B.      Defendant's Motion to Strike (Dkt. 160)

Defendant objects to all but one of the fourteen exhibits included in Plaintiff's evidence in opposition to the summary judgment motion (Dkt. 150).

### 1.      Exhibits A Through G and M

Defendant objects to Plaintiff's Exhibits A through G and M as improperly authenticated, hearsay, and double hearsay. Plaintiff argues that the documents are admissible under Rules 803(8) and 901(b)(7), Federal Rules of Evidence and avers in an affidavit (Exhibit N) that he received these documents from the Equal Employment Opportunity Commission ("EEOC") after requesting his investigation file.

Evidence produced by a nonmoving party to avoid summary judgment need not be in

admissible form if it could be reduced to admissible form at trial. See United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1444 (11th Cir. 1991) (citations omitted). However, to be considered for or against summary judgment, a document must be authenticated, either by an affidavit that meets the requirements of Rule 56(e), Federal Rules of Civil Procedure, or in accord with the Federal Rules of Evidence. Williams v. Eckerd Family Youth Alternative, 908 F. Supp. 908, 911 (M.D. Fla. 1995) (citations omitted). Federal Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." Fed. R. Evid. 901(a).

Plaintiff's statement that he received certain documents from the EEOC is not sufficient to authenticate the documents in accordance with Rule 56(e)'s requirements. See United States v. Dibble, 429 F.2d 598, 602 (9th Cir. 1970) ("A writing is not authenticated simply by attaching it to an affidavit, even if the writing appears on its face to have originated from some governmental agency and the affiant is a government official."). The accompanying documents are neither sworn nor certified, and nothing indicates whether the documents are true and correct copies of documents issued or maintained by the EEOC.

Even if Plaintiff properly authenticated the documents, Plaintiff's arguments that the documents are admissible under Rules 803(8) and 901(b)(7) fail. Rule 901(b)(7), Federal Rules of Evidence, provides that public records and reports satisfy the authentication requirement as follows:

> (7) Public records or reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.

Fed. R. Evid. 901(b)(7). Plaintiff argues that this rule, read in conjunction with Rule 803(8) (the

"business records exception") renders his purported EEOC documents admissible. However, the advisory committee's notes to Rule 901 state that the public records or reports example allows for the "authentication by proof of custody, without more." Fed. R. Evid. 901(b)(7) advisory committee's note (citation omitted). As previously noted, Plaintiff fails to prove custody or that this evidence is from the public office where items of this nature are kept.

Further, the business records exception to the hearsay rule is not all-inclusive as to an entire EEOC file. See Cruz v. Aramark Svcs., Inc., 213 F. App'x 329, 332 (5th Cir. 2007) (citation omitted). "The business records hearsay exception applies to the EEOC's report and determination, but it does not apply to the underlying material collected in the EEOC investigation." Id. Each piece of evidence in the file must be independently admissible. Id. Here, Plaintiff's Exhibit A, purportedly an EEOC investigator's notes, is unsigned, unsworn, and lacking affirmative indication of the document's author. Exhibits B and C are unsworn statements (one of which is not even signed by the purported author) that contain double hearsay. See Crowley v. L.L. Bean, Inc., 303 F.3d 387, 410 (1st Cir. 2001) (holding that various witness statements contained in an investigative report are hearsay within hearsay and are inadmissible at trial). Exhibits D, E, and M are not EEOC "findings and reports" but are simply material collected in the course of the EEOC investigation and are not independently admissible.

Exhibit E, although a presumptively admissible "Letter of Determination," contains only legal conclusions as opposed to facts developed during the EEOC investigation. See Price v. Fed. Express Corp., 283 F.3d 715, 725 (5th Cir. 2002) (distinguishing between the admissibility of an EEOC investigative report, which contains a summary of charges, review of facts as developed during the investigation, and a finding of probable cause, as opposed to a single determination letter

that states a categorical legal conclusion); <u>Barfield</u>, 911 F.2d at 650 (citations omitted) (discussing, in the context of a jury trial, that the court should consider whether an EEOC report contains legal conclusions in addition to factual content to evaluate whether to admit all or part of an EEOC determination and report).[1]   Likewise, both Exhibit F, a letter purportedly from the EEOC investigator to Defendant's legal counsel, and Exhibit G, a "right to sue" notice, offer only conclusions about Plaintiff's termination as opposed to factual findings.

Accordingly, Defendant's objections to Plaintiff's Exhibits A through G and M are sustained because Plaintiff fails to properly authenticate the documents in accordance with Rule 56(e) and, notwithstanding, the documents are inadmissible in their own right.[2]

> 2.     <u>Exhibits H, I, and J</u>

Defendant objects to Plaintiff's Exhibits H, I, and J, which are emails Plaintiff sent to various individuals, because the emails are unsworn and not referred to in Plaintiff's affidavit. Plaintiff responds that the documents are authenticated because Defendant produced them during discovery.

Documents produced during discovery "are deemed authentic when offered by a party opponent." <u>Sklar</u>, 2007 WL 2049698 at *4. Moreover, the emails would likely be admissible at trial because they can be reduced to admissible form. <u>See</u> <u>Cooper v. Southern Co.</u>, 213 F.R.D. 683, 686 (N.D. Ga. 2003). Accordingly, Defendant's objections to Plaintiff's Exhibits H, I, and J are

---

[1]  See also <u>infra</u>, page 19 n. 5.

[2]  At trial, this court would also consider whether the probative value of admitting the EEOC documents would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. <u>See</u> Fed. R. Evid. 403; <u>Walker v. Nationsbank of Fla., N.A.</u>, 53 F.3d 1548, 1554-55 (11th Cir. 1995). The Eleventh Circuit has opined that, although highly probative, EEOC determinations may be highly prejudicial in jury trials. <u>Id.</u>; <u>Barfield</u>, 911 F.2d at 650.  Thus, the district court is afforded discretion in deciding whether to admit such reports. <u>Id.</u>

overruled.

       3.    <u>Exhibits K and L</u>

Defendant contends that Exhibit K, a January 16, 2006 letter from Plaintiff's counsel to defense counsel, is unauthenticated and is hearsay. The letter states that counsel has enclosed "the initial report" of an expert regarding Plaintiff's lost retirement benefits, yet Exhibit K contains no such expert report in addition to the letter. Defendant submits Plaintiff's "report" that was attached to the letter and argues that the court cannot consider the letter and attached report because they do not comply with Rule 26(a)(2), Federal Rules of Civil Procedure.

Plaintiff's "initial report" attached to the original letter fails to meet the requirements of Rule 26(a)(2)(B). First, it is not a written report; rather, the document consists merely of mathematical calculations. Second, the document does not reflect who prepared the calculations and contains no witness signature. Further, absent from the document are witness qualifications. The document is "patently incomplete with regard to 'all opinions to be expressed and the basis and reasons therefore,' among other required disclosures." <u>Bosch v. Title Max, Inc.</u>, No. CIV A 03-AR-0463-S, 2004 WL 5238128 at *3 (S.D. Ala. Aug. 25, 2004).

Plaintiff concedes that Defendant "is technically correct as to not providing full information" but responds that the information given to Defendant "provided notification of all requirements necessary and known at that time" (Dkt. 161 at 5). Plaintiff argues that prejudice to Defendant is minimal and that this information does not involve an undisclosed witness (<u>Id.</u> at 6). Plaintiff also attaches the purportedly correct expert report to his response. However, this report also suffers from some of the same defects as the "initial report," including a lack of signature by the witness. Because Plaintiff cannot rely on inadmissible evidence at the summary judgment stage and because the letter

and reports clearly do not comply with the requirements of Rule 26, Defendant's objection to Exhibit K is sustained.

Finally, Defendant objects to Exhibit L, a March 14, 2007 letter from defense counsel to Plaintiff's counsel, because it is incomplete. Defendant argues that the exhibit contained only the letter and not the attachment referenced in the letter, which attachment was Defendant's Rule 26(a)(2) expert report. Plaintiff fails to address Defendant's argument about Exhibit L in his response. Because an incomplete document is improper summary judgment evidence, see Lugue v. Hercules, Inc., 12 F. Supp. 2d 1351, 1358 (S.D. Ga. 1997) (citations omitted), Defendant's objection to Exhibit L is sustained.

## II.    Factual Background

Between 1998 and 2000 Xpedx acquired three companies: Ailing & Cory, Zellerbach, and Nationwide Papers (Dkt. 129, Wilson Aff. ¶ 2). Plaintiff began employment with Defendant when Xpedx acquired Plaintiff's previous employer, Zellerbach. In 2001, Xpedx implemented a reduction in force ("RIF") and eliminated over 3,000 positions through both attrition and terminations.  As the reason for the RIF, the company cited overstaffing resulting from the acquisitions and integration that occurred between 1998 and 2000. Xpedx offered a severance plan in which an affected employee received a severance in exchange for waiving any potential employment-based claims against the company.  Xpedx completed a large part of the RIF by December 2001.

Before the acquisition, Plaintiff was Director of National Accounts with Zellerbach.  (Dkt. 125, Wells Dep. 9:2-23, May 12, 2006). After Xpedx acquired Zellerbach, Plaintiff remained in this position for approximately three years.  Plaintiff then held the job of General Sales Manager of National Accounts for "a year and a couple of months." (Id.) During Plaintiff's tenure with Xpedx,

8

he reported to the Vice President of National Accounts. For approximately fifteen to seventeen months before Plaintiff's termination in December 2002, Plaintiff reported to Daniel Watkoske ("Watkoske").

On September 27, 2001, Watkoske visited the National Accounts Retail office in Tampa and met with Plaintiff. According to Plaintiff, while he and Watkoske ate lunch, Watkoske stated that he hoped to "get rid of the good old boy network" and that he wanted to build a "younger, more aggressive team." (Wells Dep. 237:6-10, 278:17-21) Plaintiff further claims that in order to help build the "younger, more aggressive team," Watkoske asked Plaintiff to terminate two employees, both of whom Plaintiff believed were approaching their fortieth birthdays. (Wells Dep. 237:11-240:18)

During March 2002, Plaintiff met with Watkoske and Jack Luker ("Luker"), Vice President of Sales. Although the parties disagree on  the purpose and content of this meeting, Watkoske, Luker, and Plaintiff discussed Plaintiff's future with the company. At some point between April and July 2002, Xpedx promoted Plaintiff to the position of National Accounts Director of Sales–Retail. Watkoske created the National Accounts Director of Sales–Retail position as a result of changing the structure of the National Accounts Retail Group. (Watkoske Aff. ¶ 3)

In his previous job as General Sales Manager of National Accounts for Xpedx, Plaintiff had direct supervision over three national account managers, an operations manager, administrative assistant, and special projects manager, in addition to Plaintiff's sales responsibilities. (Wells Dep. 13:20-15:15) After his promotion, Plaintiff hired Matthew Morrow ("Morrow") as Sales Manager for National Retail, and was responsible for Morrow's direct supervision. (Watkoske Aff. ¶ 4) Plaintiff's responsibilities also included supervising his administrative assistant, Kathy Andrews

("Andrews"), although the parties disagree about whether Andrews reported directly to Plaintiff at the time of his termination. (Id. at ¶ 5; Wells Dep. 17:5-12, 32:1-5) In November 2002, Watkoske assumed the direct supervision of Morrow. (Watkoske Aff. ¶ 5)

Plaintiff held the position of National Accounts Director of Sales–Retail until December 6, 2002, when Watkoske and Andre Green ("Green"), a human resources manager, notified Plaintiff of Xpedx's decision, effective immediately, to eliminate his position. (Wells Dep. 32:18-33:10; Watkoske Aff. ¶ 7) In this meeting, Watkoske provided Plaintiff a packet of documents, which included a termination agreement. (Wells Dep. 32:18-36:5) The termination agreement included an offer of severance pay in exchange for a release of claims against Xpedx.

Plaintiff had forty-five days in which to consider the termination agreement. The company advised Plaintiff in writing to seek the advice of legal counsel and Plaintiff had seven days after signing the agreement in which he could change his mind and revoke the agreement.  On January 14, 2003, Plaintiff signed the release waiving his rights to sue Xpedx in exchange for a severance package. Plaintiff also executed a separate bonus agreement that entitled him to a bonus in excess of his 2002 target amount in exchange for an agreement not to disparage, defame, slander, or otherwise denigrate Defendant.

After separating from Xpedx, Plaintiff assumed employment in March 2003 with Bunzl as Director of National Accounts. (Wells Dep. 41:11-16) Plaintiff worked for Bunzl for approximately eight weeks. Subsequently, Unisource Worldwide of Norcross, Georgia, hired Plaintiff in July 2003. On November 24, 2003, Plaintiff filed a charge against Xpedx with the EEOC for discrimination based on age and retaliation (Dkt. 2, at 28). Subsequently, the EEOC issued a Notice of Right to Sue. Plaintiff filed suit in the Circuit Court for Hillsborough County, Florida, and Defendant removed

the case on November 30, 2005. (Id. at 2; Dkt. 1).

## II.    Summary Judgment Standard

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that there is no issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the movant has met this burden, the nonmoving party must identify specific facts that raise a genuine issue for trial. Id.; Fed. R. Civ. P. 56(e).

"A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992)). In considering a motion for summary judgment,  the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Seroka v. Am. Airlines, Inc., 834 F. Supp. 374, 376 (S.D. Ala. 2003) (citations omitted).

Evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in the nonmoving party's favor.  Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990) (citations omitted). However, the evidence must also be viewed within the scope of the evidentiary burden of the respective parties under the substantive law of the case. Id. (citing Anderson, 477 U.S. at 248). Under this standard, if the

evidence can be considered  such that a reasonable jury could find for the nonmoving party, summary judgment is inappropriate. Id. (citing Celotex, 477 U.S. at 324).

## III.    Analysis

Defendant first renews its argument that it is entitled to summary judgment because Plaintiff executed a valid release of any possible claim against Defendant. In the alternative, Defendant argues that summary judgment is proper because, if viewing the evidence in the light most favorable to Plaintiff, no evidence exists that would allow a reasonable fact-finder to infer that Defendant discriminated against Plaintiff on the basis of his age. Plaintiff responds that although Plaintiff signed a waiver of claims, the waiver is invalid. Further, Plaintiff argues that there are genuine issues of material fact that preclude the entry of summary judgment on his age discrimination claim.

### A.        Validity of the Signed Waiver

The Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f), governs the waiver and release of an age discrimination claim between an employer and employee. The burden is on the party asserting the validity of the waiver of rights to demonstrate that the waiver was "knowing and voluntary." See 29 U.S.C. § 626(f)(3). To prevail on its motion for summary judgment, Defendant "must demonstrate that there is no genuine issue of material fact as to whether the release[] complied with each of the section 626(f) requirements and as to whether the releases were otherwise knowing and voluntary." Thiessen v. Gen. Elec. Capital Corp., 232 F. Supp. 2d 1230, 1233-34 (D. Kan. 2002) (citations omitted).

An employee's waiver of a potential age discrimination claim is valid only if the employee does so knowingly and voluntarily. Burlison v. McDonald's Corp., 455 F.3d 1242, 1245 (11th Cir. 2006) (citations omitted). To qualify as knowing and voluntary under the OWBPA, a waiver of an

ADEA claim must, at a minimum, meet the statutory requirements set forth in 29 U.S.C. § 626(f).

See id. The statutory requirements are:

> (1) the release must be written in a manner calculated to be understood by the employee signing the release, or by the average individual eligible to participate;
> (2) the release must specifically refer to claims arising under the ADEA;
> (3) the release must not purport to encompass claims that may arise after the date of execution;
> (4) the employer must provide consideration for the waiver or release of ADEA claims above and beyond that to which the employee would otherwise already be entitled;
> (5) the employee must be advised in writing to consult with an attorney prior to executing the agreement;
> (6) the employee must be given at least 21 days within which to consider the agreement or 45 days to consider signing if the waiver is offered in connection with an "exit incentive or other employment termination";
> (7) the release must allow the employee to revoke the agreement up to 7 days after signing; and
> (8) if the release is offered in connection with an exit incentive or group termination program, the employer must provide information relating to the job titles and ages of those eligible for the program, and the corresponding information relating to employees in the same job titles who were not eligible or not selected for the program.

Thiessen, 232 F. Supp. 2d at 1234-35; see 29 U.S.C. § 626(f)(1)(A)-(H).

In addition to the statutory factors, the Eleventh Circuit has adopted the "totality of the circumstances" test, which requires the court to consider non-statutory circumstances and factors that may be relevant to whether an employee waived his or her rights knowingly and voluntarily. See Griffin v. Kraft Gen. Foods, Inc., 62 F.3d 368, 373-74 (11th Cir. 1995). Examples of additional non-statutory factors that may be considered under the "totality of the circumstances" test are whether the employee was subject to fraud, duress, coercion, or mistake of material fact, the employee's education and business experience, the clarity of the agreement, and the employee's access to counsel. See Griffin, 62 F.3d at 373-74; Gormin v. Brown-Forman Corp., 963 F.2d 323, 327 (11th Cir. 1992).

13

This court previously found six of the eight statutory factors undisputed (Dkt. 66).[3] At issue are two statutory factors: the requirement that the agreement be written in a manner that can be understood by the employee signing the release, and the eighth requirement pertaining to group or class incentives. The previous order concluded that a genuine issue of material fact remained as to whether Plaintiff's termination was part of a group termination program or individual and, consequently, whether Defendant provided Plaintiff with the proper information about the decisional unit (Dkt. 66).

In support of the release's validity, Defendant argues that Plaintiff's termination was not part of a larger reduction in force and submits new evidence of Plaintiff's concession that his termination was not part of a reduction in force (Dkt. 123 at 13). Plaintiff testified as follows when questioned about the nature of his termination:

> Q: And you believe it was targeted simply at you; it was not part of a larger reduction in force?
> A: I was the only one terminated. It was singly me. That's factual. One person, documented in the papers that I signed, was terminated, one person in a $6 billion organization.
> Q: So your belief was that it was not part of a larger reduction in force?
> A: I know it was not.
> Q: Okay.
> A: They eliminated a job that was created five months earlier, out of the blue –
> Q: Okay.
> A: – just eliminated it.

---

[3] Plaintiff concedes that the release specifically referred to claims arising under the ADEA, that the release did not purport to encompass claims arising after the date of the agreement's execution, that Defendant provided additional consideration to Plaintiff in exchange for the waiver, that Plaintiff had forty-five days to consider signing the agreement, and that Plaintiff was allowed seven days to revoke the agreement after signing. Although Plaintiff now argues that he never received advice from an attorney about the release (Dkt. 149 at 6-7, 10), the statutory factor is met because Plaintiff concedes that he was advised in writing to consult with an attorney; whether Plaintiff actually received advice from an attorney is immaterial to the validity of the release.

(Wells Dep. 347:14-348:2)

Defendant argues that Plaintiff's testimony leaves no issue of material fact as to whether Plaintiff's termination was part of a larger reduction in force and that therefore, the eighth statutory factor regarding the scope of the decisional unit is moot. This court agrees. In determining the validity of a release, the court considers the eighth statutory factor, whether the employer provided the employee with the proper information regarding a decisional unit, only if the termination was part of a group termination or exit incentive program. See 29 U.S.C. § 626(f)(1)(H). Because Plaintiff's testimony concedes that he was not part of a reduction in force, it is undisputed by both parties that Plaintiff's termination was on an individual basis. In response to Defendant's motion, Plaintiff relies on his arguments in response to the prior summary judgment motion and offers no rebuttal evidence to establish that his termination was part of a reduction in force. Accordingly, the eighth statutory factor is inapplicable and, in establishing the validity of the waiver, Defendant is relieved from showing that it provided Plaintiff with the correct information regarding his decisional unit.

Regarding the first statutory factor, whether the release was written in a manner that could be understood by employee signing the release (or by the average individual eligible to participate), Defendant submits Plaintiff's testimony that he read and understood the terms of the agreement. Defendant also argues that Plaintiff was educated and a business professional experienced in negotiating large, multi-million dollar contracts with large retailers. Plaintiff responds that he never became involved with the legal portions of the contracts he negotiated and argues that no testimony since Defendant's prior motion for summary judgment offers any additional support to Defendant's argument (Dkt. 149 at 9).

Plaintiff misunderstands his burden on summary judgment. Once Defendant has shown that there are no genuine issues of material fact, the burden shifts to the nonmoving party to identify *specific facts* that raise a genuine issue for trial. Celotex, 477 U.S. at 325 (emphasis added). Plaintiff fails to point to specific facts in the record that would allow a reasonable fact-finder to infer that the release was written in a manner that could not be understood by the employee signing the release. Plaintiff's conclusory assertions (for example, that "Plaintiff is at a loss" as to Defendant's argument that the release was written in a manner to be understood by the employee) are insufficient to defeat summary judgment.

Further, the parties do not dispute the absence of any non-statutory factors that the court may consider under the totality of the circumstances such as fraud, duress, coercion, or mistake of material fact. See Griffin, 62 F.3d at 373-74.  Plaintiff submits no evidence of the presence of any non-statutory factor that would create an factual issue as to whether Plaintiff signed the waiver voluntarily and knowingly. Indeed, Plaintiff fails to even address the issue of non-statutory factors in his response.

Because Defendant has established that the release met the minimum statutory requirements and there are no non-statutory factors in dispute, Defendant is entitled to summary judgment on the release issue. Notwithstanding the validity of the release, however, Plaintiff fails to show the existence of a genuine issue for trial on his age discrimination claim.

### B.     Age Discrimination Claim

To recover under the ADEA, a plaintiff must first establish a prima facie case of age discrimination through direct or circumstantial evidence. See Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999). A plaintiff's prima facie case shifts the burden to

the employer to produce legitimate, nondiscriminatory reasons for the challenged employment action. Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied, 522 U.S. 1045 (1998). A defendant's satisfaction of this burden causes the presumption of discrimination to "drop from the case," and the plaintiff must then demonstrate that the defendant's proffered reason was pretextual, or not the true reason for the termination. Id. A plaintiff may show pretext by "either directly persuading the court that a discriminatory reason more likely motivated the employer or *indirectly by showing that the employer's proffered explanation is unworthy of credence*." Id. (citation omitted) (emphasis in original). "If a plaintiff provides a prima facie case plus evidence discrediting the employer's proffered reasons, the plaintiff is entitled to have the factfinder decide the ultimate issue of discrimination." Tidwell v. Carter Products, 135 F.3d 1422, 1426 (11th Cir. 1998) (citation omitted).

Plaintiff concedes that he can present no direct evidence of age discrimination (Dkt. 149 at 14).

### 1.   Circumstantial Evidence of Discrimination: Prima Facie Case

The correct standard under which a plaintiff can establish a prima facie case of age discrimination based on circumstantial evidence depends on whether the termination was part of a reduction in force or individual in nature. The Eleventh Circuit requires a plaintiff to satisfy a four-part prima facie requirement in an individual termination case: (1) that the plaintiff was a member of the age group protected by the ADEA at the time of termination; (2) that the plaintiff was subject to an adverse employment action; (3) that a substantially younger person filled the position that the plaintiff sought or from which the plaintiff was discharged; and (4) that the plaintiff was qualified to do the job for which he was rejected. Damon, 196 F.3d at 1359 (citation omitted).

17

In a reduction in force termination, a plaintiff establishes a prima facie case by proving that: "(1) he was a member of the age group protected by the ADEA at the time of his termination; (2) he was qualified at the time of his termination; and (3) there is evidence from which a reasonable fact finder could conclude that the employer intended to discriminate on the basis of age in making the decision." Standard v. A.B.E.L. Svcs., Inc., 161 F.3d 1318, 1329 (11th Cir. 1998) (citation omitted).

Plaintiff incorrectly places the burden on Defendant to show that Plaintiff was qualified at the time of his discharge (Dkt. 149 at 15). The establishment of a prima facie case of discrimination is Plaintiff's burden. See Damon, 196 F.3d at 1359. However, Plaintiff's argument is irrelevant as Defendant concedes that Plaintiff meets two of the elements required to establish a prima facie case through circumstantial evidence: Plaintiff was (1) a member of the protected class at the time of termination and (2) qualified for his position or to assume another position at the time of his discharge (Dkt. 123 at 19 n.7; Dkt. 162 at 5). Thus, the only remaining dispute about the prima facie elements is whether Plaintiff has submitted evidence from which a reasonable fact-finder could conclude that Xpedx intended to discriminate on the basis of age in terminating Plaintiff.[4]

Plaintiff argues that EEOC documents, Plaintiff's observations of Watkoske in terminating older employees, Watkoske's statements to Plaintiff and to other employees, Plaintiff's discussion of "these issues" with senior managers, Plaintiff's testimony "as to what happened when he

_____

[4] Although contending that Plaintiff's termination was not part of a reduction in force in asserting that the signed release is valid, Defendant articulates the prima facie standard for reduction in force terminations in disputing Plaintiff's ability to establish a prima facie case of discriminatory discharge. Accordingly, the court applies (for the purposes of this argument only) the more lenient reduction in force standard to evaluate whether Plaintiff has established a prima facie case of age discrimination.

confronted Mr. Watkoske and Mr. Luker about their illegal activities," and other testimony of Plaintiff about his alleged demand for a salary increase support the inference that Defendant discriminated against Plaintiff (Dkt. 149 at 2, 16-17). To further support the inference of discriminatory conduct, Plaintiff offers Defendant's failure to explain why Plaintiff was not offered another position within the company and Watkoske's termination of certain employees after Plaintiff refused to terminate them at Watkoske's insistence (Id. at 17-18).

As discussed, supra, the EEOC documents Plaintiff provides in support of his response are not properly authenticated, attached to any supporting affidavit, or otherwise verified. The documents are also inherently inadmissible. Thus, this court may not consider such evidence in evaluating the motion for summary judgment.[5] First Nat'l Life Ins. Co. v. Cal. Pac. Life Ins. Co., 876 F.2d 877, 881 (11th Cir. 1989).

The remainder of Plaintiff's offered "evidence" is markedly insufficient to raise a genuine issue of material fact for trial. Without record citations to the remaining evidence that Plaintiff submits in support of an inference of discriminatory conduct, Plaintiff's allegations lack evidentiary

---

[5] In support of his argument that summary judgment must be denied, Plaintiff relies on the Ninth Circuit's decision in Gifford v. Atchison, Topeka and Santa Fe Ry. Co., 685 F.2d 1149 (9th Cir. 1982), which held that the EEOC's reasonable cause determination was sufficient to create an issue of fact for the jury. Although a Title VII plaintiff has an "absolute right to introduce the EEOC's reasonable cause determination into evidence" in the Ninth Circuit, Id. at 1156 n.4, the Eleventh Circuit leaves the decision of whether to admit EEOC determinations to the district court, recognizing EEOC documents as having the potential to create unfair prejudice in the minds of a jury. Barfield, 911 F.2d at 650. Further, even if the court considered the EEOC documents on summary judgment and the documents allowed Plaintiff to establish a prima facie case of age discrimination, Plaintiff's claim still fails absent a material factual dispute as to pretext. See Assily v. Tampa Gen. Hosp., 814 F. Supp. 1069, 1071 (M.D. Fla. 1993) (stating that while an EEOC finding may be highly probative of the ultimate issue, the court has discretion to determine how much weight to afford an EEOC reasonable cause determination). Accordingly, this court finds Gifford unpersuasive.

19

value for the purpose of summary judgment. See Arvigan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991) (citation omitted) (holding that a non-moving party's burden on summary judgment is to rebut the moving party's showing of an absence of a genuine factual issue with affidavits or other relevant, admissible evidence). Plaintiff fails to specifically direct this court to any evidence and cannot establish a prima facie case of age discrimination on mere conclusions. Id. (stating that a non-moving party cannot rely on legal conclusions or inadmissible evidence to defeat summary judgment). See also Tucker v. Morris State Bank, 154 F. App'x 183, 186 (11th Cir. 2005) (holding that a response to summary judgment motion devoid of citations to specific evidence was insufficient to carry non-moving party's summary judgment burden); Henry v. City of Tallahassee, 216 F. Supp. 2d 1299, 1310 (N.D. Fla. 2002) (citations omitted) (discussing that in accord with a local rule requiring each party to direct the court's attention to the material facts at issue, the court was "not obligated to search for a fact question by sifting through the record").

Accordingly, because Plaintiff fails to establish a prima facie case of age discrimination, Defendant is entitled to summary judgment on this claim. However, even if Plaintiff had prevailed on this issue for summary judgment purposes, he fails to show a material factual dispute as to pretext.

### 2.    Xpedx's Legitimate, Nondiscriminatory Reason for Termination

Assuming Plaintiff could establish a prima facie case, Defendant must only "produce evidence that could allow a rational fact finder to conclude that [Plaintiff's] discharge was not made for a discriminatory reason." Standard, 161 F.3d at 1331 (citation omitted). Defendant has met its burden of articulating legitimate, nondiscriminatory reasons for its actions. Plaintiff's subordinate, Matthew Morrow, tendered his resignation in November 2002. Among Morrow's reasons for

resigning was that he no longer desired to work for Plaintiff because of Plaintiff's management style. (Watkoske Dep. 130:10-131:13; Morrow Dep. 65:8-23) After Watkoske met with Morrow, Morrow agreed to continue his employment with Xpedx, but Watkoske and Luker determined that Plaintiff was "not looking out for the best interests of the company." (Watkoske Dep. 138:10-140:10; 135:16-136:3) Specifically, Defendant submits that the decision to eliminate Plaintiff's position was based in large part on Plaintiff's failure to complete the responsibilities and immediate initiatives shown on his job description, including his failure to train and develop the new sales manager, Morrow (Watkoske Aff. ¶ 6).

Defendant's proffered reasons are sufficient to allow a reasonable fact-finder to determine that Xpedx discharged Plaintiff without discriminatory intent. Further, Plaintiff concedes that any one of Defendant's proffered reasons meets Defendant's burden of production (Dkt. 149 at 11). Accordingly, Defendant's having presented legitimate, nondiscriminatory reasons for Plaintiff's termination shifts the burden to Plaintiff to present evidence that a genuine issue of material fact exists as to whether Defendant's proffered reasons are merely pretext for a discriminatory motive. Standard, 161 F.3d at 1332.

### 3.    Whether Xpedx's Proffered Reason is Pretextual

Plaintiff may prove pretext by (1) "showing that the legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons." Id. (citations omitted). To meet this burden, however, Plaintiff must "present concrete evidence in the form of specific facts." Dingman v. Delta Health Group, Inc., 26 F. Supp. 2d 1349, 1353 (S.D. Fla. 1998) (citation omitted).

Plaintiff's response consists largely of unsupported and conclusory allegations. At best,

Plaintiff argues that Defendant offered inconsistent explanations for Plaintiff's termination, which explanations are evidence of pretext. Plaintiff's evidence of Defendant's allegedly inconsistent statements is comprised of the following: (1) Defendant's first position was that it terminated Plaintiff as part of a reduction in force; (2) Defendant later argued that Plaintiff was terminated as a result of the elimination of Plaintiff's position; and (3) Defendant's third reason for terminating Plaintiff was because of Plaintiff's poor job performance, including Plaintiff's ability to supervise and train Morrow.

Inconsistencies in an employer's reasons for terminating an employee have evidentiary value for a showing of pretext. See Waters v. Home Depot U.S.A., Inc., 159 F. App'x 940, 941 (11th Cir. 2005) (citation omitted); Howard v. BP Oil Co., Inc., 32 F.3d 520, 526 (11th Cir. 1994). However, in this case, Defendant's allegedly inconsistent statements are insufficient to create a jury issue on the  pretext issue. The reasons offered for Plaintiff's termination, without more than conclusory assertions by Plaintiff, are not inherently inconsistent. Defendant concedes that it used reduction-in-force paperwork in terminating Plaintiff but argues that the use of such paperwork was a mistake. Plaintiff's bare assertion that "the evidence produced previously . . . shows that . . . [Defendant's] claim must fail" (Dkt. 149 at 12) does not create a factual question for the jury.  Further, Plaintiff fails to identify any evidence, other than his own testimony, which suggests that the elimination of Plaintiff's position and his poor performance are inconsistent reasons offered by Defendant for its employment decisions. Each of these reasons is sufficient to support Plaintiff's termination and, when considered in conjunction, do "not undermine Defendant's overall nondiscriminatory rationale for terminating Plaintiff." Wisdom v. M.A. Hanna Co., 978 F. Supp. 1471, 1481 (N.D. Ga. 1997) (citation omitted).

22

Moreover, Plaintiff's other offered evidence is insufficient to create a factual question on pretext. On page twenty-two of his response, Plaintiff recites, among other things, that he has provided "testimony from other witnesses" about Watkoske's comments, that another of Defendant's employees filed an informal complaint that resulted in an investigation of Watkoske, that the reasons given by Defendant for Plaintiff's termination have no substance or basis, and that Plaintiff's job performance with Xpedx was exemplary. Plaintiff submits that Defendant fired Plaintiff because of his refusal to terminate two older employees. This "evidence" as submitted by Plaintiff consists of conclusory allegations.

Plaintiff also argues that Watkoske's comment to Plaintiff that Watkoske wanted a "younger, more aggressive team" supports an inference of discrimination.[6] Remarks or comments by decisionmakers can constitute circumstantial evidence of discrimination when considered in conjunction with the other evidence in the case. Rojas v. Florida, 285 F.3d 1339, 1343 (11th Cir. 2002); Ross v. Rhodes Furniture, Inc., 146 F.3d 1286, 1291 (11th Cir. 1998) (citations omitted). The substance, context, and timing of the employer's remark goes to the probative value of the remark. See Damon, 196 F.3d 1362-63 (citations omitted) (focusing on the substance, context, and timing of the employer's comment); Looney v. Hyundai Motor Mfg. Ala., LLC, 358 F. Supp. 2d 1102, 1110 (M.D. Ala. 2005) ("[T]he strayness of the remarks merely goes to the strength of their probative value."). Plaintiff offers no evidence that Watkoske's comment was anything more than an isolated, general remark. Indeed, Plaintiff states that after confronting Watkoske about the

---

[6] As evidence of Watkoske's comment, Plaintiff cites a page from Plaintiff's deposition that is not available in the record evidence. Nor does Plaintiff's affidavit address Watkoske's alleged comment. However, the court assumes for the purposes of addressing pretext that evidence of Watkoske's comment exists.

remark, "Mr. Watkoske never again made these statements in the Plaintiff's presence" (Dkt. 149 at 3). Plaintiff offers no evidence that temporally or contextually links Watkoske's statement with Plaintiff's termination. Taken in the context of the entire record, Watkoske's remark is too attenuated from the circumstances of Plaintiff's dismissal to create an inference of pretext.

Further, regarding Plaintiff's argument that Watkoske told Plaintiff and other employees that Watkoske wanted to eliminate older employees, Plaintiff fails to cite any record evidence of what Watkoske said to Plaintiff (or other employees) and in what context and temporal relation to Plaintiff's termination.   Plaintiff's arguments about Watkoske's alleged statements are too conclusory, ambiguous, and indefinite to support a finding of pretext. Cf. English v. CSA Equip. Co., LLC, No. 05-0312-WS-B, 2006 WL 2456030, *17 (S.D. Ala. 2006) (finding that the plaintiff's account of employer's age-related comment was "too nebulous, too ambiguous, too indefinite, and too amorphous to cast doubt on" the employer's proffered non-discriminatory reason for its hiring decision).

In ruling on a defendant's motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Failing to provide any specific citation to record evidence in support of his allegations of pretext by Defendant, Plaintiff fails to meet his burden of raising a genuine issue of fact for trial. See Avirgan, 932 F.2d at 1577 (holding that conclusory allegations and legal conclusions are insufficient summary judgment evidence). Defendant is therefore entitled to

summary judgment on Plaintiff's age discrimination claim.[7]

### C.   Emotional Distress Claim

Defendant argues that Plaintiff has failed to introduce any evidence in support of his emotional distress claim (Dkt. 123 at 23). Specifically, Defendant maintains that Plaintiff cannot prove "outrageous" conduct on the part of Defendant, as required under Florida law. Plaintiff, however, characterizes his emotional distress claim as "emotional distress caused by the intentional torts of the Defendant, as pled in the complaint; and not for intentional infliction of emotional distress, which is a different cause of action." (Dkt. 149 at 23).

Plaintiff bases his emotional distress claim on retaliatory discharge theory (Dkt. 2). Without sufficient proof of retaliatory discharge, the emotional distress claim fails. Further, there is no remedy available to Plaintiff under Florida law for his emotional distress claim as pleaded. Indeed, Plaintiff cites no legal authority other than arguments that are based only on public policy considerations for expanding emotional distress claims to Florida whistle blower cases.

### D.   Whistle Blower Claims

In his Response to Defendant's summary judgment motion, Plaintiff concedes that his federal whistle blower claim is invalid (Dkt. 149 at 23). However, in his recently-filed motion to amend his response (filed almost two months after his response), Plaintiff seeks to retract this concession (Dkt. 177). Specifically, Plaintiff states that his agreement to summary judgment on the federal whistle blower claim was "predicated on a belief that [his motion to amend the complaint] would

---

[7] Plaintiff's claim for age discrimination under the Florida Civil Rights Act ("FCRA") also fails as the framework for evaluating ADEA claims and FCRA claims is the same and "federal case law interpreting Title VII and the ADEA are applicable to cases under the FCRA." Reilly v. Duval County Public Schs., No. 3:04-CV-1320-J-32MMH, 2006 WL 3130918, *7 n.12 (M.D. Fla. Oct. 31, 2006).

be allowed." (Id. at 2).  On August 22, 2007, the court denied Plaintiff's motion to amend Count III of the Complaint to allege a whistle blower claim for age discrimination pursuant to 29 U.S.C. § 623(d).  The court held that permitting Plaintiff to amend his complaint would unduly prejudice Defendant (Dkt. 175 at 5).  The court noted that Plaintiff waited more than a month after Defendant filed its summary judgment motion (which addresses Plaintiff's claim for retaliation under 42 U.S.C. § 2000e-3) to request leave to amend, the deadline for amendment to pleadings had long passed, and the discovery period had ended.

Furthermore, the court previously denied  Plaintiff's first request to amend Count III of the Complaint.  On May 7, 2007, the court granted Plaintiff's request to amend Count II to correct a scrivener's error and denied Plaintiff's request to amend Counts III and IV to add punitive damages. (Dkt. 117)  In denying Plaintiff's motion to amend Count III, the court held that Plaintiff offered no justification for the failure to promptly seek leave to file an amendment and the untimely request would result in unfair prejudice to Defendant.  Under these circumstances, it was unreasonable of Plaintiff to believe that the court would grant his second motion to amend Count III.

The court will not permit Plaintiff to amend his summary judgment response as to Count III of the Complaint at this late date.  The court has already found that Defendant would be prejudiced if Plaintiff were permitted to allege a cause of action under 29 U.S.C. § 623(d) at this point in the case.  Further, even assuming that the Arizona federal case Plaintiff cites in his proposed amendment were binding on this court, Plaintiff's failure to allege the claim amounts to more than a scrivener's error; Defendant has not had the opportunity to defend against the cause of action.  See Finical v. Collections Unlimited, Inc., 65 F. Supp. 2d 1032, 1047-48 (D. Ariz. 1999).  Lastly, that Plaintiff agreed to summary judgment as to Count III because his counsel assumed that the court

would grant his motion to amend the complaint is poor strategy the court will not condone. Therefore, the court denies Plaintiff's motion to amend his response to Defendant's summary judgment motion (Dkt. 177); Defendant is entitled to summary judgment on Plaintiff's Count III.[8]

As to Plaintiff's claim under the Florida Whistle Blower Protection Act ("FWBPA"), Fla Stat. § 448.102(3), the court declines to exercise supplemental jurisdiction over this state claim. A court may decline to exercise supplemental jurisdiction over a state claim if the district court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3). The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court. Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004). The Eleventh Circuit encourages courts to dismiss the remaining state claims when, as here, the federal claims have been dismissed prior to trial. Id. Thus, Plaintiff's FWBPA claim is dismissed without prejudice.

## V.     Conclusion

Plaintiff executed a release of all ADEA claims against Defendant, which release is valid as a matter of law. Notwithstanding, Plaintiff fails to submit sufficient evidence for summary judgment purposes establishing a prima facie case of age discrimination or that Defendant's proffered reasons for terminating Plaintiff were pretextual. After considering the motion, the record, and the evidence before the court in the light most favorable to Plaintiff, the court finds that no genuine issue of material fact exists as to whether Defendant discriminated against Plaintiff based on Plaintiff's age.

---

[8] Even if Plaintiff were allowed to amend the complaint to add a federal whistle blower claim, Defendant would likely prevail in its argument that Plaintiff knowingly and voluntarily waived his whistle blower claims,  based on the broad language of the release and Plaintiff's background and intelligence.  Therefore, amendment would also be futile.

For the reasons stated above, Defendant is also entitled to summary judgment on Plaintiff's federal whistle blower and emotional distress claims.

Accordingly, it is **ORDERED** and **ADJUDGED**:

(1)     Plaintiff's **Motion to Strike Portion of Defendant's Motion for Summary Judgment** (Dkt. 131) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's objection to footnote three in Defendant's motion for summary judgment is sustained. All other objections are overruled.

(2)     **Defendant's Motion to Strike Plaintiff's Exhibits A Through M and Rule 26 Expert Disclosures** (Dkt. 160) is **GRANTED IN PART** and **DENIED IN PART**. Defendant's objections to Plaintiff's Exhibits A through G, K, L, and M are sustained. All other objections are overruled.

(3)     Plaintiff's **Motion to Amend Response to Summary Judgment** (Dkt. 177) is **DENIED**.

(4)     Defendant **Xpedx's Motion for Summary Judgment** (Dkt. 123) is **GRANTED** as to Plaintiff's ADEA, FCRA, federal whistle blower, and emotional distress claims.

(5)     Plaintiff's claim under the Florida Whistle Blower Protection Act is **DISMISSED WITHOUT PREJUDICE**.

(6)     The Clerk of Court is directed to enter judgment in favor of Defendant, close this case, and terminate all pending motions.

**DONE** and **ORDERED** in Tampa, Florida this 11th day of September, 2007.

ELIZABETH A JENKINS
United States Magistrate Judge